## BALLARD v. AUDUBON NAT. BANK.

### (Circuit Court of Appeals, Second Circuit. March 9, 1915.)

### No. 197.

1. CORPORATIONS ☞426—OFFICERS—UNAUTHORIZED CONTRACTS—RATIFICATION.

Where a fraternal insurance corporation was governed by nine directors and three trustees, an instrument authorizing B. to sell any of its securities, signed by the trustees before their term of office had commenced, and a bill of sale to B., executed by two of the trustees after their term commenced, were wholly ineffectual, and incapable of ratification by the board of directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. ☞426.]

2. BANKS AND BANKING ☞116 — KNOWLEDGE OF OFFICERS — IMPUTING TO BANK.

Where the president of a bank accepted, as collateral security for a loan to B. personally, securities which he knew belonged to a fraternal in-

surance corporation, and which he knew B. had no authority to use for his own personal purposes, his knowledge was imputable to the bank, though he had a standing arrangement with the brokers, through whom the securities were subsequently sold by the bank, for a division of commissions on all business brought them by him; this being a collateral and incidental contract, not bringing the case within the rule that an agent's knowledge will not be imputed to his principal, when the transaction is such as to compel the agent's concealment.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. ☞116.]

3. RECEIVERS ☞167—RIGHT TO SUE—CONVERSION—TITLE AND RIGHT TO POSSESSION.

An instrument, executed by the trustees of a fraternal insurance corporation, authorizing B. to sell any of the securities of the corporation and account therefor to the trustees, and a bill of sale subsequently executed by the trustees to B., even though valid, conferred on B. authority to act only as agent of the corporation, and his title and possession being the title and possession of the corporation, its receiver could maintain an action of trover for the conversion of securities by a bank to whom B. pledged them.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 320; Dec. Dig. ☞167.]

In Error to the District Court of the United States for the Southern District of New York.

Merle I. St. John, of New York City (Arthur Ofner, of New York City, of counsel), for plaintiff in error.

Peter Condon, of New York City (Anson McCook Beard, of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is an action by the receiver of the Keystone Guard, a fraternal insurance corporation of the state of Pennsylvania with headquarters at Athens, in that state, against the Audubon National Bank, to recover damages for the conversion of securities of the value of $100,000 belonging to the Guard.

One Joseph E. Blackburn conceived a plan of merging certain fraternal insurance companies, and in pursuance thereof set out to get control of the Keystone Guard. It was governed by nine directors and three trustees, whose terms of office were to expire June 30, 1910. The annual meeting of the Guard was to take place at Denver, Colo., June 21st and Blackburn agreed to distribute $50,000 among five of the directors, the three trustees, and certain other officers, upon condition that they would resign and permit persons nominated by him to be elected in their place at that meeting. This was done, and at the same meeting the constitution was amended so as to empower the trustees to sell the Guard's securities and to buy securities for the Guard, subject to the approval of the board of directors.

Subsequently, to raise the necessary funds, Blackburn arranged with D. S. Mills for a loan of $50,000, agreeing to give him $1,000 bonus and stock exchange collateral. Mills, who was president of the Audubon Bank, arranged that a loan of $25,000 should be made to each of two of the employés, because a single loan of $50,000 was

beyond the bank's powers.   Their notes he discounted at the bank, promising them that he would not use the $50,000 until he got good collateral.

Subsequently he and Blackburn went to Athens, where, July 8, 1910, the outgoing treasurer and director, Haverly, delivered all the securities of the Guard to the incoming treasurer and trustees, who handed them to Mills, who thereupon handed the $50,000 in cash to Blackburn, who paid it over to Haverly.   This fund of $50,000, after assurance from Blackburn and Mills that no part of the Guard's securities was to be used in any way in raising it, was distributed among the directors, trustees, and officers who had resigned in order to give Blackburn control of the Guard.

June 27, 1910, the incoming trustees, whose term of office had not begun, signed a letter as follows:

"Athens, Penna., June 27, 1910.

"Mr. J. E. Blackburn:

"You are hereby authorized to sell or exchange any or all of the securities of the Keystone Guard now held by us as trustees, and accounting to us therefor as such trustees.               Eugene C. May, Chairman.
                                              "Harrison E. Hoyt,
                                              "J. F. Gray."

July 8th two of these trustees, then in office, executed a bill of sale to Blackburn as follows:

"Know all men by these presents, that we, Eugene C. May, James F. Gray, and Harrison E. Hoyt, as trustees of the Keystone Guard, of Athens, county of Bradford, and state of Pennsylvania, in consideration of the sum of one dollar and other good and valuable consideration to us in hand paid by Joseph E. Blackburn, at and before the ensealing and delivering of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, released, and confirmed, and by these presents do hereby grant, bargain, sell, release, and confirm, unto the said Joseph E. Blackburn all the goods, chattels, and articles of personal property mentioned and expressed in the schedule hereto annexed, and all our right, title, and interest in and to the same.   To have and to hold, all and singular, the said goods and chattels and articles of personal property, and every of them, by these presents bargained, sold, released, granted, and confirmed unto the said Joseph E. Blackburn, to his only proper use and behoof, his heirs, executors, administrators, and assigns, forever.

"And we, the said Eugene C. May, James F. Gray, and Harrison E. Hoyt, as such trustees as aforesaid, do by these presents hereby promise, covenant, and agree for our successors to warrant and defend the title of the said goods, chattels, and articles of personal property against all and every person and persons whomsoever.

"In witness whereof, we have hereunto set our hands and seals this eighth day of July, A. D. one thousand nine hundred and two.

                                              "Eugene C. May,   [Seal]
                                                 "Trustee of Keystone Guard.
                                              "Harrison E. Hoyt,   [Seal]
                                                 "Trustee of Keystone Guard."

[1] On the same date a special meeting of the directors was held, but the notice of meeting did not cover any such business as a confirmation of the foregoing documents, nor is any such resolution produced and proved, though it is said that one was adopted.   However, we think the documents wholly ineffectual, and incapable of ratification by the board, because the authority of June 27th was given by per-

sons not then trustees, and the bill of sale of July 8th was executed by only two out of the three trustees.

Upon his return to New York Mills deposited $100,000 of the Guard's securities with the Audubon Bank as collateral for the two loans of $25,000 each, which securities were subsequently sold, and the loans, with interest and a bonus of $1,000, paid out of the proceeds. What was done with the rest of the Guard's securities does not clearly appear, and it is not necessary to inquire.

[2] It is manifest that an outrageous fraud was practiced upon the Guard, but the trial judge directed a verdict for the defendant on the ground that the knowledge of Mills in connection with it was not imputable to the bank. He relied upon the case of Bank of Overton v. Thompson, 118 Fed. 798, 56 C. C. A. 554. In that case, however, the cashier was acting throughout on his own account, and therefore the well-established principle that an agent's knowledge will not be imputed to his principal, when the transaction is such as to compel the agent's concealment, applied. The defendant seeks to bring this case within the exception, because Mills had a standing arrangement with the brokers who sold the Guard's securities, that he was to divide commissions with them on all business brought by him. This was a collateral and incidental contract, which in no way prejudiced the bank, or was any reason for concealing from it the fraud practiced on the Guard in a transaction which Mills was making for the bank entirely within the scope of his authority as president. He accepted as collateral for the loan made by the bank to Blackburn personally collaterals which he knew belonged to the Guard, and which he also knew Blackburn had no authority to use for his own personal purposes. This knowledge was imputable to the bank.

[3] Finally, it is objected by the defendant that, whatever the receiver's rights may be in equity, he cannot maintain this action of trover at law, because he had not the title to or the right of immediate possession of the securities in question. It is said that the title and right of possession were in Blackburn by virtue of the documents executed June 27 and July 8, 1910. Taking them, however, at their face value, it is perfectly obvious that the authority conferred on Blackburn was to act as agent of the Guard. His title and possession was its title and possession, so that the receiver was fully qualified to maintain the action of trover. Thorpe v. Burly, 11 Johns. (N. Y.) 285.

The judgment is reversed.